**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| BELINDA S.,[1]  :  | Case No. 3:20-cv-331 |
|     Plaintiff,  : | |
| vs.  : | Magistrate Judge Peter B. Silvain, Jr. (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,  : | |
|     Defendant.  : | |

# DECISION AND ENTRY

Plaintiff Belinda S. brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #13), the Commissioner's Memorandum in Opposition (Doc. #15), and the administrative record (Doc. #10).

**I.     Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

In the present case, Plaintiff applied for benefits on April 27, 2017, alleging disability due to cervical spine severe bilateral foraminal stenosis; dehydrated disc and retrolisthesis; degenerative disc disease; disc and bilateral uncinate spur; chronic neck pain, headaches, and fatigue; bilateral occipital neuralgia; and depression. After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Kevin Barnes. Thereafter, the ALJ issued a written decision, addressing the first four sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since June 19, 2016.

Step 2: She has the severe impairments of Degenerative Disc Disease (DDD) of the Cervical Spine; Cervical Spondylosis with Myelopathy; Cervical Stenosis; Cervical Facet Arthritic Changes; Mild Cervical Retrolisthesis; Cervicalgia; Uncovertebral Joint Arthropathy; Lumbar Multilevel Disc Bulging with Facet Hypertrophy; Radiculopathy; Brachial Neuritis or Radiculitis; Bilateral Occipital Neuralgia; Fibromyalgia; Polyarthritis; Rheumatoid Arthritis (RA) of Multiple Sites; Chronic Fatigue; Small Vessel Cerebrovascular Disease; and Migraine Headaches.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … subject to the following limitations: (1) never climb ladders, ropes or scaffolds, or crawl; (2) occasionally climb ramps and stairs, balance stoop, crouch, or kneel; and (3) avoid hazardous machinery and unprotected heights."

She is capable of performing her past relevant work as a doctor's office receptionist as this work does not require the performance of work-related activities precluded by Plaintiff's RFC.

(Doc. #10, *PageID* #s 47-54).[2] Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 54-55.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #10, *PageID* #s 47-55), Plaintiff's Statement of Errors (Doc. #13), and the Commissioner's Memorandum in Opposition (Doc. #15). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the

---

[2] Plaintiff's assignment of error was limited to the ALJ's decision to not include the work-preclusive limitations from the fourth hypothetical in her RFC. Accordingly, she has waived her right to challenge any other findings, as she failed to adequately raise them. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (finding plaintiff had waived its challenge to the ALJ's findings on certain impairments by not raising it in the merits brief).

3

claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In her Statement of Errors, Plaintiff alleges that the ALJ erred in formulating an RFC that did not include "off task allowances in the workplaces, or absences, due to the migraine headaches [Plaintiff] experiences due to her conditions." (Doc. #13, *PageID* #556). According to Plaintiff, ALJ Barnes erred by failing to consider Plaintiff's testimony and medical evidence regarding her migraines as well as the vocational expert's testimony on absences and off-task behavior when formulating the RFC. *Id*. at 556-58. In response, the Commissioner maintains that the ALJ's decision to exclude these work-preclusive limitations is supported by substantial evidence. (Doc. #15, *PageID* #s 567-70).

During the hearing, ALJ Barnes posed a series of hypotheticals to the vocational expert about the availability of jobs in the national economy for an individual with certain hypothetical limitations. (Doc. #10, *PageID* #s 86-89). In response to the first three hypotheticals, the vocational expert testified that such an individual would be able to perform at least Plaintiff's past job of a doctor's office receptionist as it is classified in the Dictionary of Occupational Titles (DOT) as well as how Plaintiff performed it. *Id*. at 87-88. In the fourth hypothetical, the vocational expert confirmed that the additional limitations of (1) not being able to sustain work activity for a full 8 hours on a regular and consistent basis; (2) not being able to sustain sufficient concentration, persistence or pace to do even simple routine tasks for 8 hours a day for a 40-hour work week; (3) being off-task for 20 percent of the day in addition to regularly scheduled breaks; and (4) being absent from work at least two days a month would preclude full-time competitive employment if applied either individually or collectively. *Id*. at 88-89.

In assessing Plaintiff's RFC, ALJ Barnes ultimately decided not to include any of the work-preclusive limitations contained in the fourth hypothetical, indicating that "such limitations are not supported by the evidence and are not found to be includable in the applicable [RFC]." *Id*. at 54. Plaintiff contends that the failure to include these limitations in the RFC constitutes reversible error as she would have been found disabled had these limitations been included. (Doc. #13, *PageID* #s 558).

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis …." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (July 2, 1996). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. § 404.1520(a)(4). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- *i.e.*, opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted). Furthermore, in assessing a plaintiff's RFC, the ALJ is not required to incorporate every limitation included in the hypothetical questions posed to the vocational expert—rather, the ALJ need only incorporate the limitations he deems credible. *Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal citation omitted).

In this case, substantial evidence supports ALJ Barnes's assessment of Plaintiff's RFC. ALJ Barnes explained the history of Plaintiff's neck pain and migraines. (Doc. #10, *PageID* #s 47-48). Specifically, he detailed:

> [Plaintiff] relates her neck pain to her migraine headaches, and has diagnoses for migraine headaches and small vessel cerebrovascular disease. [Plaintiff] rates her migraine pain as "7-9" on a pain scale of 1-10. She describes the pain as dull and squeezing with episodes of photophobia, phonophobia, and dizziness. [Plaintiff] has undergone Botox injections for migraine headache treatment.

*Id*. at 48 (internal record citations omitted).

Furthermore, the administrative record does not contain any medical opinion detailing how Plaintiff's migraines and related neck pain, either individually or in combination, impact her functioning to the point that they would cause her to suffer from the work-preclusive limitations she advocates for, including (1) not being able to sustain work activity for a full 8 hours on a regular and consistent basis; (2) not being able to sustain sufficient concentration, persistence or pace to do even simple routine tasks for 8 hours a day for a 40-hour work week; (3) being off-task for 20 percent of the day in addition to regularly scheduled breaks; and/or (4) being absent from work at least two days a month. Instead, Plaintiff relies on generalities in her medical records and testimony to support her claim that her RFC should have included these work-preclusive restrictions. (Doc. #13, *PageID* #s 557-58). Specifically, Plaintiff points to her diagnosis and treatment for her migraine headaches. *Id*. Noticeably absent from Plaintiff's argument is the fact that none of the records endorse the work-preclusive restrictions she believes should have been included in her RFC. Indeed, while the record confirms that Plaintiff has been diagnosed with and receives regular treatment for migraine headaches, there is no medical opinion of record stating that this impairment would cause Plaintiff to suffer from the work-preclusive restrictions she endorses.

In addition to her treatment records, Plaintiff also relies on the opinion of the medical consultative examiner, Gary Ray, M.D. (Doc. #13, *PageID* #557). Dr. Ray submitted an assessment of Plaintiff's impairments and capabilities in June 2019. (Doc. #10, *PageID* #s 536-549). In his assessment, Dr. Ray reviewed Plaintiff's history of headaches and neck pain. *Id*. at

536. On examination, he noted that Plaintiff had no trouble answering questions or following directions. *Id*. at 538. She ambulated with a normal gait and without an assistive device. *Id*. Plaintiff had no trouble getting on or off the examination table and was able to reach 50 percent of a squat position. *Id*. Following the examination, Dr. Ray found that Plaintiff's history, physical examination, and medical records were consistent with a diagnosis of multiple levels of cervical disc protrusions with spinal cord flattening as well as spondylosis and facet hypertrophy. *Id*. He did not find any evidence of myelopathy or radiculopathy. *Id*. Additionally, he found that she had a history of mild low back pain, diverticulosis, breast cancer with mastectomy, migraine headaches, and anxiety with depression. *Id*. at 538-39. He also noted that she had previous diagnoses of fibromyalgia and rheumatoid arthritis but did not find trigger points or joint abnormalities on examination. *Id*. at 539.

As for Plaintiff's ability to perform work-related activities, Dr. Ray opined that she could frequently lift and carry no more than 10 pounds due to her neck pain and headaches, which he noted to be supported by an MRI of cervical spine. *Id*. at 540. He also found that she could sit for 1 hour without interruption for up to 6 hours a day and stand for 1 hour without interruption for up to 2 hours a day. *Id*. at 541. As for walking, however, she would only be able to walk for 30 minutes at a time for a total of 1 hour a day. *Id*. Dr. Ray attributed these limitations to her tenderness and decreased motion at her neck, numbness, and fatigue with activities. *Id*. Similarly, Dr. Ray found that these impairments would also prevent Plaintiff from ever reaching overhead, pushing and pulling, climbing stairs or ramps, balancing, crawling, being around unprotected heights, or vibrations. *Id*. at 542-43. He also found that she could only occasionally work around moving mechanical parts, operate a motor vehicle, work around humidity and wetness, pulmonary

irritants, and extreme temperatures. *Id*. Dr. Ray did not find that Plaintiff had any limitations in her ability to take care of herself. *See id.* at 545.

Notably, however, Dr. Ray did not provide an opinion on Plaintiff's off-task behavior or absenteeism. Instead, he provided certain physical and postural limitations based primarily on Plaintiff's neck pain, reduced range of motion, and to a lesser extent, her migraines. In turn, the ALJ found most of these restrictions "somewhat persuasive" and agreed that she should be limited to sedentary exertion. *Id*. at 51. Indeed, the only restrictions endorsed by Dr. Ray that the ALJ did not adopt were those related to environmental irritants as the record did not support a history of respiratory distress. *Id*. Accordingly, the ALJ properly considered Dr. Ray's opinion, gave it persuasive weight, and found it to support his finding that Plaintiff could perform sedentary work. Given that Dr. Ray did not opine that Plaintiff would be limited by the work-preclusive restrictions advocated by Plaintiff, the ALJ's decision to not include these restrictions is not error.

Additionally, Plaintiff's reliance on her subjective complaints to support including these limitations in her RFC is unavailing. It is well-settled that an ALJ is not required to accept a plaintiff's subjective complaints but may instead properly consider the credibility of a plaintiff. *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). If the ALJ's credibility determinations are explained and enjoy substantial support in the record, the Court is without authority to revisit those determinations. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). *See Beavers v. Sec'y. of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

8

In this case, it is notable that none of the subjective complaints cited by Plaintiff actually demonstrate that her impairments would cause the limitations she advocates for. Specifically, in support of her argument, Plaintiff points to her testimony regarding her daily migraine headaches that vary in intensity and cause her to experience squeezing pain that starts on a scale of 8 out of 10 in the morning and eventually subsides to a scale of 5 to 8 out of 10 in the evening. (Doc. #13, *PageID* #557). Absent from Plaintiff's argument, however, is how these migraine headaches translate to a finding that she would not be able to sustain work activity for a full 8 hours on a regular and consistent basis; not be able to sustain sufficient concentration, persistence or pace to do even simple routine tasks for 8 hours a day for a 40-hour work week; be off-task for 20 percent of the day in addition to regularly scheduled breaks; and/or be absent from work at least two days a month.

Further, even if Plaintiff had provided such citations to the record, substantial evidence exists to support ALJ Barnes's decision not to include those limitations in the RFC. For example, in response to Plaintiff's subjective complaints regarding the severity of her symptoms, ALJ Barnes concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported." (Doc. #10, *PageID* #53). Here, the ALJ noted that restricting Plaintiff to a reduced range of sedentary exertion would adequately address her symptoms and there was no evidence indicating that she would not be able to perform this level of work on a regular and continuing basis. *Id*. Hence, ALJ Barnes carefully considered the totality of the evidence, applied the proper standards, and clearly explained his credibility findings. In doing so, he did not find Plaintiff's alleged impairments to be wholly uncredible but, rather, he simply found that they did not support the additional hypothetical limitations advocated by Plaintiff. Under these circumstances, this Court is without authority to disturb that finding.

For these reasons, Plaintiff's statement of error is not well taken.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. # 13) is **DENIED**;

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

March 3, 2022                                               *s/Peter B. Silvain, Jr.*
                                                                        Peter B. Silvain, Jr.
                                                                        United States Magistrate Judge